1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11 | KING COHEN and HEATHER COHEN,      Case No.:  3:22-CV-1451-GPC-WVG

12                        Plaintiffs,   **ORDER:**
                                        **1. DENYING MOTION FOR LEAVE**
13 | v.                                 **TO FILE LATE REPLY [ECF**
                                        **No. 43];**
14 | RORY HALE CHENOWTH and             **2. GRANTING MOTION TO**
   | KELLYE LAUGHERY,                   **DISMISS [ECF No. 23]; AND**
15                                      **3. DENYING MOTION FOR**
16                        Defendants.   **SANCTIONS [ECF No. 19]**
17

18

19       Pending before the Court is Defendants Rory Chenowth's and Kellye Laughery's

20 Motion to Dismiss, ECF No. 23, Plaintiffs King and Heather Cohens' first Amended

21 Complaint, ECF No. 17.  King Cohen has responded in opposition to the motion to dismiss.

22 ECF No. 27.  Chenowth and Laughery filed a motion for leave to file a late reply, ECF

23 No. 43, but absent good cause for counsel overlooking the deadline and because the matter

24 is moot given the disposition of this order, the motion for leave to file a reply is DENIED.

25 Additionally pending before the Court is King Cohen's Motion for Sanctions against Rory

26

27                                        1

28

Chenowth.  ECF No. 19.  Chenowth has responded in opposition to the motion for sanctions, ECF No. 25, and King Cohen has replied, ECF No. 30.

Pursuant to Civil Local Rule 7.1(d), the Court has determined the matters are ripe for decision without oral argument and hereby VACATES the hearing scheduled for Friday, March 24, 2023.  For the reasons that follow, Chenowth's and Laughery's Motion to Dismiss is hereby GRANTED and King Cohen's Motion for Sanctions is DENIED.

# I.   BACKGROUND AND PROCEDURAL INFORMATION

## A.   Original Complaint And Pro Se Representation

The Cohens' original complaint was filed by King and Heather Cohen on behalf of themselves and their children, Does (a)–(f).  ECF No. 1 at 1, 4.[1]  Neither Cohen parent appears to be a licensed attorney, so the Court sua sponte dismissed the unnamed children from the original complaint and explained that "even though 'a non-attorney may appear *in propia persona* in his own behalf, that privilege is personal to him. . . . He has no authority to appear as an attorney for others than himself.' "  ECF No. 9 at 2–3 (quoting *C.E. Pope Equity Tr. v. United States*, 818 F.2d 696, 697 (9th Cir. 1987)).  In relevant parts, the Court dismissed the unnamed and unrepresented children from the complaint and permitted the Cohens to file an amended complaint.  *Id.* at 5.

The operative first Amended Complaint ("Complaint") was timely filed and removed the unnamed children.  ECF No. 17.  Although Heather Cohen's name is included in the case caption, *see id.* at 1, she did not sign the Complaint, *id.* at 16.  Indeed, Heather Cohen does not appear to have signed any recent filings.  *See, e.g.*, ECF No. 19 (Motion for Sanctions); ECF No. 27 (Response to Motion to Dismiss); ECF No. 30 (Response to Defendants' Opposition to Motion for Sanctions); ECF No. 33 (Motion to Appear

---

[1] Pages numbers are based on CM/ECF pagination.

Telephonically). Rule 11 of the Federal Rules of Civil Procedure requires that "[e]very pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented." *See di Genova-Change v. Ducey*, No. CV-20-00141-TUC-RM, 2020 WL 6555236, at *2 (D. Ariz. May 18, 2020) (collecting cases). Because non-attorneys may not "appear as an attorney for others than himself," *see Pope Equity*, 818 F.2d at 697; the Cohens were already informed about this requirement; nearly four months have passed since the Cohens were given leave to amend their original complaint; and Heather Cohen's signature at this point would be immaterial given the disposition of the Court, the Court proceeds as though Heather Cohen had been dismissed from the Complaint. Accordingly, future references to "Cohen" or "Plaintiff" will refer to King Cohen to the exclusion of Heather Cohen unless otherwise specified.

### B.     Amended Complaint

Cohen alleges that Chenowth and Laughery own the property ("Property") next door to King and Heather Cohen and their six children. ECF No. 17 at 1. King and Heather Cohen purportedly "own and operated a registered homeschool with the state of California" next to the Property. *Id.* at 2. Cohen alleges that Chenowth and Laughery "temporarily and unlawfully reside at [the Property] for multiple weeks at a time" when it is not rented out. *Id.*

Cohen alleges that Chenowth is a registered sex offender and resident of New Mexico who, between October 1 and November 30, 2021 temporarily resided at the Property for more than five days without registering in accordance with California Penal Code § 290.002. *Id.* at 1. Cohen does not allege that Chenowth had any physical contact— lawful or unlawful—with any of Cohen's children or any other children at the Cohen's residence at any time. *See* ECF No. 17 (absence).

Cohen further alleges that Laughery "failed to fulfill her duties" as a mandated reporter under the Child Abuse and Neglect Reporting Act of 1980 because she did not

"report . . . Chenowth unlawfully living at [the Property] longer than 5 days without registering."  ECF No. 17 at 1.  *See* Cal. Pen. Code §§ 11164–11174.3.  Cohen does not allege that Laughery observed, knew, or should have reasonably suspected that any child on or around the Property had been abused or neglected, either personally or within the scope of her employment.  *See* ECF No. 17 (absence).

Cohen asserts that because of Chenowth "living unlawfully next door" and "as needed," Cohen and his family have had to severely curtail the use of their home and surrounding property.  *Id.* at 3.  Further, they have permanently shut down their homeschool and are allegedly in the process of selling their property.  *Id.* at 4.  Cohen also purports to "have suffered emotional distress, contemplating if [his] children will be next to suffer lewd or lascivious acts at the hands of [Chenowth]."  *Id.* at 3 (capitalization removed).  He has purportedly suffered from insomnia, paranoia, panic attacks, loss of breath, dizziness, severe headaches, migraines, severe stomach and neck spasms, and skin rashes because of "Chenowth living unlawfully next door."  *Id.* at 3–4.

Cohen also alleges that between November 14 and November 19, 2022—after the original complaint was filed but before the first amended complaint was filed—"over 99 repulsive and repugnant cigarette butts were lodged on or around" Cohen's mailbox in violation of California Penal Code §§ 374.4, 136.1; 18 U.S.C. §§ 1701, 1705, 1503; and Civil Local Rule 2.1.  *Id.* at 4–5.  Cohen maintains that Chenowth and Laughery are responsible for littering the cigarette butts on and around his mailbox because:  (1) the Cohens do not smoke; (2) Chenowth does smoke; (3) this had never happened to Cohen's mailbox before; and (4) Cohen had served Chenowth and Laughery via the mailbox.  *Id.* at 4–5.  Cohen alleges the cigarette butts being littered around his mailbox was an intimidation tactic designed to stop him from proceeding in this litigation.  *Id.* at 4.  He alleges that because of the littering, he has experienced "loss of reputation, shame, embarrassment, loss of dignity, loss of personal securities, emotional distress,

psychological fear and stress." *Id.* at 5 (capitalization removed).  Because cigarettes are not naturally occurring, Cohen alleges this act was "a form of biological warfare with respect to 18 U.S.[C.] § 1503." *Id.*  Cohen also interprets the cigarette butts to have been littered on and around his mailbox as "a thinly v[e]iled death threat" in violation of Rule 2.1.  *Id.*

Cohen seeks to recover for each of the above-described statutory violations under the doctrine of negligence per se.  *Id.* at 13–16.  He seeks compensatory and punitive damages "in the amount of $20,000,000," but emphasizes that the "complaint is not merely about money" such that nominal damages would be enough if that is what the jury reasoned to be fair.  *Id.* at 16.

### C.    Motion For Sanctions

Cohen filed a motion for sanctions on the same day he filed the first amended complaint.  ECF No. 19.  The motion for sanctions is against Chenowth only, but otherwise the allegations are functionally the same as those in the Complaint.  *Compare* ECF No. 17 at 4–5, *with* ECF No. 19 at 1–2.  Cohen asks for sanctions generally, *see id.* at 15, and lists sanction options that were available in other cases "under the court[']s inherent power" *id.* at 13–14.

Cohen attached to his motion an affidavit and several pictures of what appears to be cigarettes littered around his mailbox.  *See* ECF No. 19-1 at 3–8.  He does not provide any information about the pictures either in his motion or in the affidavit.  *See* ECF No. 19 (absence).  Chenowth objects to the admission of these pictures as hearsay, lacking foundation, and for lack of personal knowledge.  ECF No. 25-2 at 2.  Because Cohen did not provide any information about the photographs, including when they were taken or who took them, the Court sustains the objection for lack of authentication under Federal Rule of Evidence 901.  Chenowth also objects to a statement in the affidavit asserting that Chenowth had used the cigarettes that were allegedly littered around Cohen's mailbox and

that "[n]othing like th[i]s has ever happened in the entire history of Plaintiffs living at the current address or ever."  ECF No. 19-1.  The Court sustains this objection because, as discussed below, other than conjecture, the affidavit and motion do not offer plausible support for the allegation that Chenowth littered the cigarettes.

Chenowth submitted a sworn declaration stating that he was in New Mexico from November 15–19, 2022.  ECF No. at 25-1 at 2.

## II.   LEGAL STANDARDS

### A.   Standing Under Article III Of The United States Constitution

The federal court is one of limited jurisdiction and the burden of establishing jurisdiction rests on the party making the assertion.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  The federal court possesses only that power authorized by the Constitution or a statute.  *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  The Court is constitutionally required to raise issues related to federal subject matter jurisdiction and may do so sua sponte.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998); *see Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 673 (9th Cir. 2012) ("[I]t is well established that 'a court may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action, even on appeal.' " (quoting *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002))).  Article III standing is required for a federal court to have subject matter jurisdiction over a claim.  *See Fleck & Assocs., Inc. v. Phoenix*, 471 F.3d 1100, 1103 (9th Cir. 2006) ("Because [plaintiff] lacked standing . . . the district court lacked subject matter jurisdiction over the claim and should have dismissed on that basis without discussing the merits.").

### B.   Failure To State A Claim For Which Relief Can Be Granted

Rule 12(b)(6) permits a court to dismiss a complaint when the plaintiff has failed "to state a claim upon which relief can be granted."  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Rule 8(a)(2) requires that the plaintiff set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." The United States Supreme Court has interpreted Rule 8(a)(2) as requiring that the complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

"To survive a motion to dismiss, a complaint must contain a sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when it contains factual allegations "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "All reasonable inferences must be drawn in favor of the non-moving party." *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010). "Generally, a court may not consider material beyond the complaint in ruling" on a motion to dismiss. *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' " i.e., "the amendment would be futile." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serve-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.   Standard For Pro Se Parties

Courts "liberally construe[]" documents filed pro se, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).   But while giving liberal interpretation to pro se complaints, a court "may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### D.   Evidentiary Presumption - Negligence Per Se

Each of the claims raised by Cohen are Negligence claims premised on negligence per se theories of liability.   Under California law, "[t]he doctrine of negligence per se is not a separate cause of action, but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence." *Dent v. Nat'l Football League*, 968 F.3d 1126, 1130 (9th Cir. 2020) (quoting *Johnson v. Honeywell Int'l Inc.*, 179 Cal. App. 4th 549, 555 (2009)); *see also Dyer v. United States*, 832 F.2d 1062, 1065 (9th Cir. 1987) ("Negligence per se liability is founded upon violation of a statute or safety regulation, which raises a rebuttable presumption of negligence if the violation results in injury to a member of the class of persons intended to be protected by the legislation, and the harm is the kind the regulation was intended to prevent.").   "The doctrine does not provide a private right of action for violation of a statute." *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285 (2006).   Rather, it merely establishes a presumption of negligence in certain circumstances and the plaintiff still "must allege facts to support the four elements of negligence:  duty, breach, causation, and damages." *Dent*, 968 F.3d at 1130.

A person is presumed to have failed to exercise due care under the doctrine of negligence per se if:

> (1) He violated a statute, ordinance, or regulation of a public entity;

(2) The violation proximately caused death or injury to person or property;

(3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and

(4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

Cal. Evid. Code § 669.[2]   In other words, for a court to rely on a statutory violation in its negligence determination, "not only must the injury be a proximate result of the violation, but the plaintiff must be a member of the class of persons the statute . . . was designed to protect, and the harm must have been one the statute . . . was designed to prevent." *Ramirez v. Nelson*, 44 Cal. 4th 908, 918 (2008) (omissions in original) (quoting *Stafford v. United Farm Workers*, 33 Cal. 3d 319, 324 (1983)).

## III.    DISCUSSION

### A.    Whether Cohen Has Article III Standing For Any Of His Claims

Cohen's Complaint seeks to recover under multiple theories of negligence per se. ECF No. 17 at 13–15.  As a court of limited jurisdiction, the Court sua sponte analyzes whether Cohen has Article III standing to raise his claims.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998).  "A plaintiff has standing only if he can 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.' " *California v. Texas*, 141 S. Ct. 2104, 2113 (2021). The injury must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical." ' " *Lujan*

---

[2] "The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318–19 (2005) (quoting Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 14, Reporters' Note, Comment *a*, p. 195 (Tent. Draft No. 1, Mar. 28, 2001)).

1   *v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted) (quoting *Whitmore*

2   *v. Arkansas*, 495 U.S. 149, 155 (1990)).  "[A] plaintiff must demonstrate standing for each

3   claim he seeks to press and for each form of relief that is sought."  *Town of Chester v.*

4   *Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017) (quoting *Davis v. Fed. Election Comm'n*, 554

5   U.S. 724, 734 (2008)).

6      Liberally construing Cohen's Complaint, the Court concludes that he lacks

7   Article III standing as to his claims concerning Chenowth's purported failure to register

8   and Laughery's purported failure to report. As to these two claims, Cohen has failed to

9   allege a legally protected interest.

10   **1.    Cohen lacks standing to bring his claims of negligence per se against Chenowth and Laughery for violating California Penal Code Sections 290 and 11166, respectively.**

12      Cohen's first two causes of action concern injuries arising from Chenowth "living

13   unlawfully" next door to the Cohens.  The Complaint offers that Chenowth's "unlawful

14   conduct" was "temporarily living unlawfully" at the Property for more than five days

15   without having registered in accordance with California Penal Code § 290.[3]  ECF No. 17

16   at 1, 14.  Meanwhile, Laughery's "unlawful conduct" was failing to report that Chenowth

17   was living at the Property without having registered in accordance with California Penal

18   Code § 290, which allegedly violated California Penal Code § 11166 because Laughery is

19   a mandated reporter.  *Id.* at 1–3, 14–15.  The Complaint posits that because Chenowth

20   unlawfully lived next door between October 1 and November 30, 2021, and returns

21   whenever the property is not rented out, Cohen has suffered the following injuries:

---

[3] The Complaint first alleges Chenowth violated Cal. Pen. Code § 290.002, which pertains to "out-of-state residents working or attending school in California," ECF No. 17 at 1, but the cause of action repeatedly specifies § 290, *id.* at 14, 5.  The Court proceeds under the assumption that section 290 was the intended section for this cause of action.

inability to safely operate his homeschool; inability to use his property as intended; the need to sell his property;[4] "emotional distress worrying when, or if, the Defendant will come back [and] contemplating if [Cohen's] children will be next to suffer lewd or lascivious acts at the hands of [Chenowth]; "insomnia and paranoia checking locks and doors obsessively"; "random panic attacks, which ultimately leads [sic] to, loss of breath and dizziness"; "severe headaches and migraines"; "severe stomach and neck spasms"; skin rashes; and his "children meeting [Chenowth]." *Id.* at 1–4, 14 (capitalization removed).

California Penal Code § 290 establishes registration requirements for a person convicted of various sex-related crimes upon taking up residence in a California jurisdiction. The purpose of the mandatory sex offender registration statute is "to make sex offenders deemed likely to recidivate readily available for police surveillance and 'to notify members of the public of the existence and location of sex offenders so they can take protective measures.' " *Ruelas v. Superior Court*, 235 Cal. App. 4th 374, 379 (2015) (quoting *People v. Brandao*, 203 Cal. App. 4th 426, 441 (2012)). Assuming that Chenowth would be required to register in accordance with section 290, there does not appear to be any provision in § 290 or anywhere else preventing Chenowth from living— temporarily or permanently—at the Property.

---

[4] The timeline of events is somewhat unclear from the face of the Complaint, but based on the initial complaint, it appears that the Cohens lived at their home and operated their homeschool before Chenowth and Laughery temporarily resided next door. *See* ECF No. 1 at 2 ("Cohen comments, how he assumed, [Chenowth and Laughery] were new renters, because they had been [at the Property] so long . . . ."). *See Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996) ("When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party or his agent." (quoting *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 198 (2nd Cir. 1929))).

Assuming the injuries Cohen has described are both (a) concrete and particularized and (b) actual, there is no traceable connection of the allegedly unlawful conduct, i.e. the failure to register, to the alleged injuries.  Instead, all the injuries Cohen has alleged pertain to Chenowth owning and temporarily living at the Property. There is nothing to suggest that had Chenowth registered in accordance with section 290 that any of Plaintiff's injuries would have been ameliorated.  Accordingly, even if Chenowth failed to register in violation of section 290, this unlawful conduct is not "fairly traceable" to any of Cohen's alleged injuries which all stem from Chenowth living at and owning the Property. *Cf. Allen v. Wright*, 468 U.S. 737, 757–58 (1984) (holding injury not fairly traceable to alleged unlawful conduct when plaintiffs failed to allege the conduct made appreciable impact on plaintiffs), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

Even more attenuated is the connection between the above-described injuries and the purportedly unlawful conduct Cohen attributes to Laughery.  Assuming that Laughery is a mandated reporter as alleged by Cohen, then California Penal Code § 11166 required her to act only if, in her "professional capacity or within the scope of [her] employment," she "ha[d] knowledge of or observe[d] a child who the mandated reporter [knew] or reasonably suspect[ed] has been the victim of child abuse or neglect."  Cal. Pen. Code § 11166(a).  Cohen appears to accuse Laughery of violating section 11166 because she did not report Chenowth to the appropriate authorities when he was living at the Property without having registered.  ECF No. 17 at 1, 14.  Because Cohen fails to allege that Laughery knew or had reason to suspect that any child had been the victim of child abuse or neglect—let alone at the hands of Chenowth—Cohen neither points to any unlawful conduct by Laughery within the scope of section 11166 nor provides a means by which the Court could possibly trace Cohen's injuries to Laughery's actions.

3:22-CV-1451-GPC-WVG

For these reasons, the Court concludes that Cohen's claims arising from Chenowth allegedly "living unlawfully next door," even when liberally construed and accepting all factual allegations as true, fail to satisfy mandatory Article III standing requirements and therefore must be dismissed.  District courts are instructed to "grant leave to amend even if no request to amend the pleading was made, unless [they] determine[] that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Because this is Cohen's First Amended Complaint and he has not alleged any unlawful action on the part of Laughery, let alone any unlawful action that would be fairly traceable to his alleged injuries, the Court does not foresee any possible means by which Cohen could cure this standing deficiency as to Laughery.  The Court DENIES Cohen any leave to amend regarding Laughery's purported failure to report under California Penal Code § 11166.  As to Cohen's cause of action against Chenowth for allegedly failing to register in compliance with California Penal Code § 290, the Court entertains doubts that the standing deficiency can be cured, but the Court is not prepared to say it is *impossible* to do so and thus grants Cohen leave to amend this standing deficiency.  The Court also observes that it was required to dismiss this cause of action upon concluding Cohen lacked standing without reaching the merits of Chenowth's other arguments in his motion to dismiss.  *See Fleck & Assocs., Inc. v. Phoenix*, 471 F.3d 1100, 1106 & n.4 (9th Cir. 2006).

> **2.    Cohen has standing at this stage to bring his claim of negligence per se against Chenowth and Laughery for violating laws pertaining to mailboxes and litter.**

Cohen's third cause of action concerns cigarette butts that were purportedly littered on and around his mailbox.  Cohen alleges that Chenowth and Laughery were responsible for the litter.  ECF No. 17 at 4.  Cohen describes experiencing "loss of reputation, shame, embarrassment, loss of dignity, loss of personal securities, emotional distress,

13

psychological fear and stress" and intimidation because of this purportedly unlawful action. *Id.* at 5, 15 (capitalization removed). Cohen suggests that, given the timing of him initiating this litigation and the subsequent littering, this was likely an intimidation tactic, or even a "thinly vailed [sic] death threat." *Id.* at 4–5, 15. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice [for standing], for on a motion to dismiss [the Court] 'presum[es] that general allegations embrace those specific facts that are necessary to support the claim.' " *Defenders of Wildlife*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). Liberally construing the Complaint and accepting the facts as they are alleged, the Court concludes that Cohen sufficiently alleges a personal injury—intimidation, loss of reputation, as well as various forms of emotional distress—that is fairly traceable to Chenowth's and Laughery's alleged unlawful conduct—littering cigarette butts in violation of several state and federal statutes. Cohen thus appears to have standing at this stage such that the Court may address the merits of Chenowth's and Laughery's motion to dismiss of this claim.

### B. Cohen Fails To State A Claim For Negligence Per Se As To The Cigarette Litter Around His Mailbox.

Chenowth and Laughery argue that claims pertaining to the mailbox incident should be dismissed without leave to amend because (1) the Complaint fails to allege sufficient factual information beyond the discovery of cigarette butts near the mailbox between November 15 and November 19, 2022, ECF No. 23-1 at 5–6, and (2) the Complaint fails to allege that Laughery or Chenowth possessed the mental state required by one of the statutes, *id.* at 7.

In relevant parts, the Complaint outlines the following facts and laws that would tend to help establish a claim of negligence per se. ECF No. 17 at 12–16. The section on Duty, in its entirety, identifies 18 U.S.C. §§ 1503, 1701, 1705 and California Penal Code

§§ 374.4, 136.1.[5]  *Id.* at 12.  The Court liberally construes this section of the Complaint as alleging that the cited statutes establish the standard of care Chenowth and Laughery were expected to uphold.  The duty breaches are described as:  "biological agent," "obstructed mail," "Damaging a Mailbox," "Littering," and "Intimidating a witness," respectively.  *Id.* The Complaint explains that because Chenowth and Laughery allegedly "[p]our[ed] over 99 cigarette butts on or around [Cohen's] mailbox, [Cohen is] intimidated . . . and access to [Cohen's] mail is obstructed by over 99 pieces of toxic trash thus [Cohen's] mailbox is damaged."  *Id.*  The Complaint also describes injuries concerning loss of reputation, dignity, and personal securities; shame; embarrassment; emotional distress; and psychological fear and stress arising from the mailbox incident.[6]  *Id.* at 5.  The Court turns next to whether Cohen has sufficiently alleged the elements of negligence per se.

1.   **Whether Cohen has alleged sufficient facts to entertain allegations that Chenowth or Laughery violated any statute in the mailbox incident**

Cohen has identified three federal and two state statutes which he alleges give rise to a colorable claim for negligence per se.  ECF No. 17 at 14.  The first statute, 18 U.S.C. § 1701, penalizes the knowing and willful obstruction or retardation of "the passage of the mail, or any carrier or conveyance carrying the mail."  Even assuming that Chenowth or Laughery acted knowingly and willingly when they purportedly littered, Cohen fails to

---

[5] Under the "General Authority" section, the Complaint also quotes extensively from Civil Local Rule 2.1 concerning Professionalism.  ECF No. 17 at 7–11.  This appears to be taken directly from Cohen's Motion for Sanctions.  *See* ECF No. 19 at 2–6 (same quoted language and emphasis added in same locations). Because there is no discussion in the Complaint applying Rule 2.1 to the facts, and because the portions establishing both duty and appropriate disciplinary action are specific to conduct by attorneys rather than parties, *see* Rules 2.1.a.2–.3; 2.2.a, the Court declines to discuss Rule 2.1 further in this context.

[6] The "Damages" section of the Complaint does not delineate which injuries are specific to the mailbox incident versus Chenowth taking up residence next door, *see* ECF No. 17 at 12, and so the Court looks to the facts section for the description of injuries specific to the mailbox incident, *see id.* at 5.

allege any "obstruction or retardation" stemming from the litter.  *See United States v. Upshaw*, 895 F.2d 109, 110–11 (3d Cir. 1990) (collecting cases and interpreting statute to require that there be some "measurable delay" for statutory violation).  Cohen's opposition brief merely quotes the statute without more.  ECF No. 27 at 28.  Absent any allegation that—or foreseeable means by which—the litter caused a "measurable delay" in delivery or transportation of mail, Cohen cannot proceed with his negligence per se claim under this statute.

The second statute, 18 U.S.C. § 1705, penalizes the willful or malicious destruction or injury of "any letter box or other receptacle intended or used for the receipt or delivery of mail" as well as the injury, defacement, or destruction of "any mail deposited therein." Although the Complaint suggests that the mailbox was damaged, ECF No. 17 at 4, it fails to explain, nor can the Court reasonably surmise, how the littering of cigarette butts "on or around" the mailbox could result in any physical harm to the mailbox.  There is no mention of any harm being done to the mail within, *see id.* at 4–5 (absence), and Cohen's opposition brief merely quotes the statute without further analysis, *see* ECF No. 27 at 28.  The Complaint fails to allege sufficient facts to demonstrate there has been any violation of this statute.

Third, 18 U.S.C. § 1503 fails because Cohen—as well as the Chenowth and Laughery—appear to misquote the statute as concerning biological weapons, *see* ECF No. 17 at 7, 12; ECF No. 23-1 at 7; *see also* 18 U.S.C. § 175 (Prohibitions with respect to biological weapons), but it actually concerns influencing or injuring officers or jurors. To the extent that Cohen intended to rely on 18 U.S.C. § 175,[7] he fails to allege—and it is not plainly obvious that—cigarette butts constitute a "biological agent [or] toxin" within the

---

[7] Without addressing the discrepancy, Cohen's opposition to the Defendants' Motion to Dismiss discusses 18 U.S.C. § 175, ECF No. 27 at 20, indicating to the Court that this was the intended statutory scheme.

meaning of the statute.  *See* ECF No. 17 at 5 (concluding "the Defendants [sic] ammunition was not cultivated, collected, or otherwise extracted from its natural source or a toxin that is naturally occurring environment thus the defendants [sic] ammunition is a form of biological warfare").  In his opposition papers, Cohen points to various statements from various government agencies demonstrating that *smoking* cigarettes is hazardous to a person's health, ECF No. 27 at 21–22, but fails to engage with the statutory text.  The Complaint fails to allege sufficient facts to demonstrate there has been any violation of this statute.

Fourth, California Penal Code § 374.4 penalizes littering "in or upon public or private property" as an infraction.  As described above, Cohen has attributed the litter to Chenowth and Laughery because: (1) the Cohens do not smoke; (2) Chenowth does smoke; (3) this had never happened to Cohen's mailbox before; and (4) Cohen had served Chenowth and Laughery via the mailbox.[8]  ECF No. 17 at 4–5.  Cohen's opposition brief merely quotes the relevant statutory text without adding any additional analysis.  ECF No. 27 at 28.  These conclusory statements, even when taken as true, do "not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' "  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss").

Fifth, California Penal Code § 136.1(a) establishes criminal penalties for anyone that "[k]nowingly and maliciously prevents or dissuades"—"or attempts to prevent or

---

[8] Cohen also seems to suggest that because Chenowth has allegedly "been convicted of perverted acts with a child," he is all the more inclined to be the one that "pervert[ed] the mailbox."  *See* ECF No. 17 at 4.  However, one act does not logically flow from the other, and under Federal Rule of Evidence 401, 403, and 404, the Court would not permit evidence to establish the alleged conviction for the means of establishing Chenowth's culpability regarding litter around the mailbox.

dissuade"—any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law."  Aside from the above-mentioned facts Cohen alleges establish that Chenowth and Laughery were responsible for the litter, Cohen summarily "insist[s]" this was done in violation of section 136.1(a) and "was specifically designed to invoke, intimidation [sic] . . . , fear, and nervousness to stop, [Cohen] from pursuing legitimate, lawful, litigation against [Chenowth] for living as an unregistered sex offender in California."  ECF No. 17 at 4–5 (capitalization removed).  There is no "non-conclusory 'factual content' " hidden within these allegations such that the Court could infer that Cohen is plausibly entitled to relief, *see Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009), and Cohen's opposition papers do not add any further insight, *see* ECF No. 27 at 23–24 (absence).

Liberally construing all factual allegations in Cohen's favor, the Court concludes Cohen failed to allege facts sufficient to support a statutory violation as to 18 U.S.C. §§ 1701, 1705, 175, and California Penal Code §§ 374.4, 136.1.  Although this analysis was conducted in light of the first element for negligence per se, because Cohen also unilaterally points to each statute to describe duty breaches under common law negligence, *see* ECF No. 17 at 12, the Court also concludes that Cohen has failed to provide sufficient matter that, accepted as true, would plausibly support finding that Chenowth or Laughery breached any duty of care they owed to Cohen.

**2.    Whether Cohen has alleged sufficient facts to entertain allegations that any statutory violation proximately caused his injuries**

The Court assumes, without deciding, that had Cohen alleged facts sufficient to infer any statutory violation, the injuries described were also proximately caused by the violation.

**3.    Whether Cohen has alleged injuries of the nature that the statutes were designed to prevent**

18

In order to determine which injuries a statute was designed to prevent, the Court relies "on the ordinary principles of statutory interpretation, including the language or text of the statutory provision, its location within the larger statutory scheme, the more general context of the statute, and indications of specific legislative intent."  Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 14, Reporters' Note, Comment *f* (Am. L. Inst. 2010, Mar. 2023 Update); *see Spates v. Dameron Hosp. Ass'n*, 114 Cal. App. 4th 208, 219 (2003) (using statutory text and context to determine which harms statute was designed to prevent).  Again, the injuries that Cohen has alleged to arise from the cigarette litter around his mailbox include "loss of reputation, shame, embarrassment, loss of dignity, loss of personal securities, emotional distress, psychological fear and stress," and "intimidation."  ECF No. 17 at 5, 15 (capitalization removed).

Cohen's alleged injuries are not within the scope of three out of the five statutes he has implicated.  First, the plain text of 18 U.S.C. § 1701 indicates it was designed to prevent interference with mail as well as mail carriers.  Second and similarly, section 1705 is designed to prevent destruction and injury to mailboxes and the mail within.  Absent any indication that the cigarette litter interfered with Cohen's mail service, or somehow injured his mailbox or the mail within, this element is not satisfied as to 18 U.S.C. §§ 1701 or 1705.  Third, although subsection (b) of 18 U.S.C. § 175, does not mention "weapon" in the text, the *statute* is titled "Prohibitions with respect to biological weapons."  And textually, the statute is not concerned with the litter of roughly 100 cigarettes, but with prohibiting a person from amassing a quantity of any biological agent or toxin that could not have any "peaceful purpose."  There is no rational basis to conclude 18 U.S.C. § 175 is implicated anytime someone amasses over 100 cigarettes.  *See, e.g.*, *Bond v. United States*, 572 U.S. 844, 859–66 (2014) (explaining that prohibition against development, production, use, etc. of "*any* chemical weapon" under 18 U.S.C. § 229 was not expansive enough to allow prosecution for use of "a chemical irritant" in a domestic dispute (emphasis added)).

19

As to the remaining statutes, at this stage, Cohen's alleged psychological and emotional injuries appear to be of the nature that the two implicated California statutes were designed to prevent. California Penal Code § 136.1 prohibits and provides criminal penalties for witness intimidation. Cohen has directly alleged that he feels "intimidated" by the cigarette litter, ECF No. 17 at 15, and the other psychological and emotional harms that he has purportedly suffered are of the type that a statute seeking to proscribe witness intimidation would also seek to prevent. Finally, California Penal Code § 374.4, proscribing littering, is located within Title 10, concerning "Crimes Against the Public Health and Safety," and litter is defined to include cigarettes. Cal. Pen. Code § 374(b). Section 374.4 was plainly designed to prevent the litter that Cohen experienced around his mailbox from occurring.

Liberally construing all factual allegations in Cohen's favor, the Court concludes Cohen failed to allege injuries of the kind that 18 U.S.C. §§ 1701, 1705, and 175 were designed to prevent. In the event Cohen were able to plausibly connect the Defendants' actions to violations of these two statutes, his alleged injuries appear to be of the kind that California Penal Code §§ 374.4 and 136.1 were designed to prevent.

### 4. Whether Cohen is of the class of persons for whose protection the statute was adopted

"To invoke negligence per se, a party must show that the plaintiff was within the class of persons the legislature was endeavoring to protect." Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 14, Reporters' Note, Comment *g* (Am. L. Inst. 2010, Mar. 2023 Update); *accord Elsner v. Uveges*, 34 Cal. 4th 915, 927 n.7, 932 (2004). Cohen summarily alleges for each statute that this fourth element of negligence per se is satisfied because he "maintain[s] current citizenship of California and the United States" and these statutes "were adopted to protect the citizens of California and of the United States." ECF No. 17 at 15. At this stage, and after liberally construing the Complaint, this

conclusory statement satisfies the requirement for California Penal Code § 374.4, which plainly strives to protect "public health and safety."  Furthermore, it is plainly obvious that Cohen, as the plaintiff and person pursuing this litigation, would fall within the class of people for whom California Penal Code § 136.1—prohibiting witness and victim intimidation—was designed to protect. *Cf.* Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 14, Reporters' Note, Comment *g* (Am. L. Inst. 2010, Mar. 2023 Update) (discussing close relationship between class of persons and type of injury analyses). For the other statutes, the Complaint does not explain with sufficient specificity—and it is not plainly obvious—that Cohen is within the class of persons Congress was trying to protect.

### 5.    Conclusion as to Cohen's failure to state a claim for which relief can be granted

Cohen has failed to allege facts sufficient to demonstrate any statutory violation as to 18 U.S.C. §§ 1701, 1705, and 175, and California Penal Code §§ 374.4 and 136.1.  For similar reasons, he has also failed to provide sufficient factual matter, accepted as true, that would support the common law negligence elements of duty and breach for any of these statutes.  Furthermore, as to 18 U.S.C. §§ 1701, 1705, and 175, Cohen fails to plausibly allege that his purported injuries are of the kind sought to be prevented by the statutes, or that he is of the class of persons Congress sought to protect by enacting these statutes. Accordingly, the Court concludes there are no other facts that could be alleged that, while being consistent with the challenged complaint, could also cure the deficiencies as to 18 U.S.C. §§ 1701, 1705, and 175.  *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  The Court therefore DENIES Cohen leave to amend these claims as to either Defendant.  As to Cohen's claims of negligence per se under California Penal Code §§ 374.4 and 136.1, although the Court entertains doubts that their deficiencies can be

3:22-CV-1451-GPC-WVG

cured, the Court is not prepared to say it is *impossible* to do so and thus grants Cohen leave to amend under these statutes.

If Cohen elects to file a second amended complaint, the Court instructs that he include some "competent proof" demonstrating that the alleged damages satisfy the jurisdictional requirement of $75,000.  *See KVOS, Inc. v. Associated Press*, 299 U.S. 269, 277–78 (1936); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) ("If [the plaintiff's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof.  And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence"); *cf. Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) ("When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith.  Similarly, when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.") (citations omitted).

## C.    Cohen's Motion For Sanctions Is Denied.

Cohen's motion for sanctions was not filed under the Federal Rules of Civil Procedure.[9]  Instead, he points to various federal and state laws, the Local Civil Rules, and case law.  ECF No. 19.  Indeed, courts retain an "inherent power to impose sanctions for . . . bad-faith conduct."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–47 (1991).  This

---

[9] Rule 11 sanctions concern misrepresentations made to the court, and subsection (c)(2) imposes a 21-day safe harbor period under which the moving party must allow the non-moving party 21 days to correct the challenged filing before the motion may be filed in court.  Cohen's motion does not mention Rule 11, does not concern any filings made by Chenowth or Laughery, and was filed about a week after the incident purportedly warranting sanctions occurred.  *See* ECF No. 19.

inherent power stems from the court's need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases," *id.* at 43 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)), but "must be exercised with restraint and discretion," *id.* at 44; *see also Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993) (requiring "specific finding of bad faith" before Courts may invoke inherent powers (*quoting United States v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir. 1986))). In *Chambers*, sanctions were warranted because the defendant and his attorneys engaged in repeated unethical and abusive conduct, including repeatedly taking actions in contempt of court orders, and proceeding with a series of meritless motions and pleadings and delaying actions. *See* 501 U.S. at 37–38. Despite repeated warning from the court, neither defendant nor his attorneys relented in their activities. *Id.*

Cohen's motion for sanctions, similar to his Complaint, encourages the Court to conclude that because Chenowth allegedly smokes cigarettes and the Cohens do not smoke, the cigarettes must have come from Chenowth.[10] *See* ECF No. 19 at 1. These conclusory statements allow only for the mere inference of the possibility of misconduct, not a finding of bad faith. Furthermore, even if Cohen had alleged facts sufficient for the Court to find that Chenowth had been responsible for the cigarette litter, the Court concludes that such an action, without more, would not arise to a level of bad faith warranting sanctions. *See Chambers*, 501 U.S. at 37–38 (describing events that would warrant sanctions).

Cohen's motion for sanctions is DENIED.

---

[10] Cohen also offers that Chenowth's current tenants smoke. ECF No. 19 at 1. He alleges that the "tenants sided with [Chenowth] via text message in September," *id.*, but Cohen's Complaint suggests that the tenants were not particularly fond of Chenowth, *see* ECF No. 17 at 2 (describing the tenants as "outraged" about restrictions their landlords were imposing and cursing Chenowth for allegedly being a "Cho-Mo" or a child molester) such that the Court does not afford this allegation any weight.

**IV.    CONCLUSION**

For the reasons explained above, King Cohen's motion for sanctions is DENIED. Rory Chenowth's and Kellye's Laughery's motion to dismiss is GRANTED as to all causes of action. The Court grants Cohen leave to amend only the negligence per se claims arising under California Penal Code §§ 290, 374.4, and 136.1 provided that he (1) remedy the above-described deficiencies regarding standing and stating a claim, and (2) file some "competent proof" demonstrating that the damages arising from these two causes of action satisfy the $75,000 amount in controversy requirement to proceed under diversity jurisdiction. A second amended complaint, if any, must be filed within 45 days of entry of this order.

**IT IS SO ORDERED.**

Dated:  March 16, 2023

Hon. Gonzalo P. Curiel
United States District Judge

24

3:22-CV-1451-GPC-WVG